**TEXAS & N. O. R. CO. v. KRASOFF et al.**
No. 11688; Motions Nos. 13238, 13242.

Court of Civil Appeals of Texas. Galveston.
March 1, 1945.

Rehearings Denied March 29, 1945.

Virginia Noel and Tom M. Davis, both of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellant.

Earl Cox, of Houston, for appellees.

GRAVES, Justice.

This was a suit instituted by Mrs. Krasoff, individually and as next friend of her two minor sons, Sylvan and Kenneth Krasoff, against Texas and New Orleans Railroad Company, to recover damages because of a collision at a public crossing in the town of Stafford, Texas, between one of appellant's passenger trains and a truck owned and driven by Sam Krasoff, husband and father, respectively, of appellees. As a result of the collision Sam Krasoff was instantly killed, and his truck demolished. The case was tried before a jury, and, in response to special issues submitted, the jury found both appellant and Krasoff were guilty of negligence which proximately caused the collision. The jury also found against appellant on issues submitted as embodying the applicable doctrine of discovered peril.

Appellees moved for judgment on the jury's verdict, and appellant moved for judgment under Article 2211, Vernon's Texas Civil Statutes, as amended, requesting the court to disregard all the jury's answers to the special issues pertaining to discovered peril, on the ground principally that discovered peril was not raised by the evidence.

Appellant's motion was overruled, and appellant duly excepted. Judgment was entered for appellees for the total sum of $21,293.60.

As indicated, the judgment was so rendered upon the jury's verdict alone, no other nor independent findings of the court itself from the evidence having been either requested or made; so that, the appeal is a clean-cut one, having to do only with the record made below upon the issue of discovered peril as a cause of action, on the one side, and a ground of defense, on the other.

Not only so, but as the general statement has likewise presaged, appellant's main contention below was that discovered peril was not raised by the evidence at all as an issue of fact; in this court it reiter-

ates that position, and adds thereto that, even if it were raised, the special inquiries submitting it (Nos. 13 to 16, both inclusive) were, (1) erroneous as against its objections thereto, and (2) that the jury's verdict thereon was so against the overwhelming preponderance of the evidence as to be clearly wrong.

The special issues submitted were, in his verbis, these:

"No. 13. Do you find from a preponderance of the evidence that the deceased Sam Krasoff and the truck which he was driving were in a position of peril at the railroad crossing in question immediately prior to the collision between the train and such truck?

"If you have answered Special Issue No. 13 'We do', and only in that event, then you will answer:

"No. 14. Do you find from a preponderance of the evidence that the engineer operating defendant's locomotive discovered and realized the perilous position, if any, of Sam Krasoff and the truck which he was driving at the crossing in question in time so that, by the exercise of ordinary care upon his part, and with the means at hand and in safety to himself and the train he was operating and the occupants thereof he could have avoided the injury to or death of Sam Krasoff?

"Answer 'We do', or 'We do not'.

"If you have answered Special Issue No. 14, 'We do', and only in that event, then you will answer:

"No. 15. Do you find from a preponderance of the evidence, that the engineer operating defendant's locomotive, after the discovery and realization if any, of the perilous position, if any, of Sam Krasoff and the truck which he was driving, failed to exercise ordinary care in the use of the means at hand consistent with the safety of himself and the train he was operating and the occupants thereof, to avoid the injury to or death of Sam Krasoff?

"Answer 'We do', or 'We do not'.

"If you have answered Special Issue No. 15 'We do', and only in that event, then you will answer:

"No. 16. Do you find from a preponderance of the evidence that such failure, if any you have found, was a proximate cause as that term has been defined to you, of the injury to and death of Sam Krasoff?

"Answer 'We do', or 'We do not'."

After careful consideration of the extended record, aided by able briefs and oral arguments thereon from both sides, this court has reached the overall conclusion that, while it is unable to hold the pleadings and evidence did not give rise— potentially—to a cause involving the doctrine of discovered peril, the appellant's alternative position, that, in any event, it was erroneously submitted in the quoted issues, is well taken, and must be sustained.

 In the first place, as their several terms disclose, each successive one of the quoted inquiries was expressly made dependent upon an affirmative answer being given to its immediate predecessor; in the second place, the first of them, No. 13, limits the consideration of any such perilous condition to its having occurred not only "at the railroad crossing"—that is, at the point where the tracks of the railroad cross Bellaire road—but also likewise restricted the time of its occurrence to "immediately prior to the collision". This inquiry did not correctly embody the doctrine of discovered peril in Texas, for two reasons: (1) The only proper inquiry being whether or not the truck and Krasoff were in the position of peril at a time when the engineer could have avoided the collision; (2) it was not only obvious but self-evident that at that last instant in the contemporaneous movement of the two machines toward the point of junction, with not more than an instant of time intervening between their collision, no human agency could have avoided it.

Still a third reason for the inapplicability of this issue No. 13 is that the undisputed evidence itself showed what was thus inevitable, that the driver and his truck were in peril at such precise time, hence it was improper to submit an undisputed fact.

 In such a developed situation, the trial court had no right to assume that if special issue No. 13 had been free of this inherent vice, and had been properly framed, it would have been answered by the jury adversely to appellant, merely because succeeding issue No. 14 was answered in the affirmative. Greer v. Thaman, Tex.Com.App., 55 S.W.2d 519, 520; Dixie Motor Coach Corporation v. Galvan, 126 Tex. 109, 86 S.W.2d 633.

 Likewise was issue No. 14 predicated upon such peril's having been found under No. 13 to have existed "at the crossing

in question", thereby denying the jury a right to consider it as having occurred in any other way, and necessarily conveying the court's idea that there was some evidence that the truck was actually at the railroad track at a time when the engineer could have done something that might have avoided the collision; this, when, as indicated, that result was necessarily impossible when not more than an instant of time remained in which he could have done anything. The same consideration, that there was no evidence tending to indicate that the engineer might have avoided the injury that late, whatever he did, inhered in this inquiry, as it did likewise in No. 13.

Obviously, it is thought, such submission as a whole did not meet the positive requirement of Rule 279, Texas Rules of Civil Procedure, that the court "shall submit the controlling issues made by the written pleadings and the evidence"; indeed, it did not comply with appellees' own theory of the "discovered peril" they had plead and sought to prove.

This for the reason that their trial petition, (1) declared that Sam Krasoff's truck "was then upon the crossing aforesaid", when the appellant's "agents, servants, and employes in charge of the operation of such train"—not the engineer alone—"drove and operated the locomotive drawing such train into the left side of the truck"; (2) that such "agents, servants, and employees aforesaid", and not the engineer only, "were guilty of negligence in each and all of the particulars hereinafter enumerated" —that is, of all the detailed negligent acts they contended ensued when the new duty was cast upon the appellant not to run Krasoff down after such operatives so discovered his actual position of peril; (3) in paragraph (k) of such pleadings, they finally so concreted their declared-upon cause of action into this:

"In that the deceased and the truck which he was driving were in a position of peril at the crossing aforesaid, immediately prior to the collision complained of, and that the defendant's agents, servants and employees in charge of the operation of its locomotive above mentioned, actually saw and discovered the perilous position of the deceased and the truck in which he was riding, and realized that in reasonable probability the deceased would not and could not extricate himself from such position of peril, such discovery and realization being in time so that, in the exercise of ordinary care, and with the means at hand and in safety to themselves and the train they were operating, and other occupants thereof, if any, they could have avoided the collision complained of, all of which they negligently failed to do."

In thus confining, in issue No. 13, the peril to the railroad crossing immediately prior to the collision, and next, in Nos. 14 and 15, further restricting the alleged negligent acts of appellant in not meeting its new duties under that discovery to what the engineer only did or did not do, the declared-upon cause of action for discovered peril was thus cast, as it were, into a straight-jacket, which, as indicated supra, did not fit even the pleadings and proof of the appellees themselves.

This developed condition requires a reversal of the trial court's judgment, and a remanding of the cause for another trial. Since under Article 2211, Vernon's Texas Civil Statutes, as amended, and appellant's motion pursuant thereto for judgment in its favor notwithstanding the jury's adverse answers to the three special issues, the evidence must be viewed most favorably toward the appellees, disregarding all conflicts therewith (National Life & Accident Ins. Co. v. Ringo, Tex.Civ.App., 137 S.W.2d 828, writ of error refused), rendition of the cause may not be decreed in appellant's favor.

This for the additional reasons that, when the evidence the appellees offered is so construed, it at least tended to support their written pleadings to the effect that there was a discovery by the engineer, or by some other one of the train's operatives, that Sam Krasoff either had already brought himself into a position of peril from the train, or would probably do so, at a time when the train and truck were far enough apart that due use of their means at hand might have avoided the collision— but that they negligently failed to so employ them.

In other words, this evidence, when so viewed, tended to show, potentially at least, that such an issue as appellees so plead was raised for the jury, but for the restrictions so put upon it by the four quoted inquiries.

Further discussion is deemed unnecessary. The judgment will be reversed, and the cause remanded.

Reversed and remanded.

### On Motions for Rehearing.

Both sides have presented motions for rehearing, which have been given careful consideration; but it is concluded that the original judgment herein reversing and remanding this cause for another trial was correct, and should be adhered to.

It may be—in view of the respective criticisms of the parties to different recitations therein—that there were some inaccurate expressions in this court's opinion then delivered; for instance, the appellees contend that this court was in error in reciting that the expression, as used in the special issues, "at the railroad crossing in question" meant "where the tracks of the railroad crossed Bellaire Road", whereas in fact the "railroad crossing" "covered all that part of the public highway from the point where it touched the property line of the railroad company on one side until it passed over and beyond the railroad company's property line on the opposite side of the tracks."

It may be conceded that this is correct; but still it self-evidently appears that there could have been no sufficient time left, when the train was running from 50 to 70 miles per hour, and the truck was moving from 8 to 10 miles per hour.

The appellant, in its turn, objects to this court's use of the phrase that it was "unable to hold the pleadings and evidence did not give rise—potentially to a cause involving the doctrine of discovered peril", insisting:

"The mere potential raising of an issue does not satisfy the requirement that a special issue must be supported or raised actually by the evidence in order to warrant its submission to the jury."

Likewise, for the sake of argument at least, it might be conceded that there was inaccuracy in this respect also; but, just as appellees' criticism did not go to the soundness of the court's holding, neither does the quoted one from appellant, nor is it entitled to a rendition of this cause for that, or any other reason, because, as this court's former opinion otherwise recited, there was evidence for the appellees sufficient to raise an issue for the jury over whether the sort of discovered peril it declared upon in the pleadings quoted from in this court's original opinion existed. That being so, the holding originally made to the same effect is here now reiterated, that the appellees thereby became entitled to a correct submission of that issue—when so properly raised by both their pleading and their proof—to the jury.

Without undertaking to recapitulate, or even to make a full resume of it, a substantial statement of it may be thus made:

"From appellant's plat of the intersection, and the measurements reflected thereon, it is established that the farthest the deceased and his truck could ever have been from the appellant's track after getting on the paved highway was 80; feet. That when the truck was 80 feet from the track the driver could see a locomotive approaching from his left for a distance of 580 feet, and, conversely, the engineer on the locomotive could see the truck for a like distance; that when the truck was 50 feet from the track and the locomotive 925 feet from the truck, the truck operator could see the locomotive, and the engineer of the locomotive could see the truck, and that when the truck was 30 feet from the track and the locomotive 1285 feet from the truck, each of the parties could see the vehicle being operated by the other."

Mr. N. S. Jenkins, the engineer operating its train, testified on direct examination:

"That he saw the truck as it approached the crossing. That at approximately 400 or 500 feet from the crossing he saw the truck, and the truck in his opinion was 40 or 50 feet from the crossing at that time; he thinks the truck was going slow. That he was operating the train at a speed of around 40 to 50 miles an hour as he approached the crossing.

"That when he said that when he first saw the truck he was 400 or 500 feet from the truck, that was just his opinion. That after seeing the plat, and the set up, it might be that he was as far as 900 feet from the truck when he first saw it. That he might have been 400 or 500 feet from the truck when he first saw it or he might have been as far as 900 feet. That when he first saw the truck approaching the rails he made no effort to slacken the speed of his train."

The appellant's witness, Mr. H. J. McKenzie, an employee of the appellant, testified on cross-examination:

"That he was on the train at the time of the collision. That he didn't hear any whistle blown before the collision. That from a point 50 feet north of the center of the appellant's track a person in a truck

could see a locomotive approaching from the east a distance of 925 feet, and, conversely, an engineer in a locomotive could see the truck for an equal distance." Houston E. & W. T. R. Co. v. Kopinitsch, 114 Tex. 367, 268 S.W. 923.

Pursuant to these conclusions, the motions for rehearing under review will both be refused.

Motions for rehearing refused.